Barbara G. HOOVER, Administrator of the Estates of Ronald W. Huffman and Shirley Huffman, Appellee,

v.

Ronald J. WEBB and Eileen J. Webb, Defendants,

and

Julia M. Wallace n/k/a Julia M. Holst, Appellant.

No. 89–1367.

Supreme Court of Iowa.

Sept. 19, 1990.

Two contracts, covering separate tracts, are involved. In 1976, the Wallaces [1] sold their farm in Warren County to Ronald J. Webb and Eileen J. Webb (the Webbs). The farm was subject to a first mortgage held by the Federal Land Bank of Omaha. As part of the purchase price the Webbs gave the Wallaces a promissory note, secured by a second mortgage (subject to the Federal Land Bank mortgage) to the Wallaces.

Later the Wallaces purchased a different tract from Ronald W. and Shirley Huffman.[2] In partial satisfaction of the purchase price for the tract they purchased from the Huffmans, the Wallaces agreed, by "quitclaim deed," to transfer their vendor's interest in the tract they had previously sold to the Webbs. The transfer, called an assignment, stated that the Wallaces "hereby assign, set over and transfer to [the Huffmans] all their right, title and interest in [the earlier] mortgage and note secured thereby."

Patrick W. Brick and Mary S. Bernabe of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for appellant.

Stephen A. Hall of Hall and Schlenker, Indianola, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

HARRIS, Justice.

Purchasers paid for real estate partly in cash and partly by transferring a vendor's interest in land they had previously sold. The vendor's interest in the earlier contract later became worthless and the question here is which party to the later contract must bear the burden of the loss. The trial court, applying a provision in the uniform commercial code, assigned the loss to the purchasers. We reverse and remand.

The Webbs later defaulted on their obligations, including the one to the Federal Land Bank. The Federal Land Bank foreclosed on the first mortgage, thereby extinguishing the second mortgage which the Wallaces had assigned to the Huffmans. The Webbs took bankruptcy. The Huffmans then brought this equitable action against the Wallaces, demanding unqualified endorsements on the Webbs' note. The trial court held for the Huffmans and the Wallaces appeal.

The trial court determined that the suit is governed by Iowa Code section 554.3201(3) (1989), which states:

3. Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. Negotiation takes effect only when the endorsement is made and until

1. Manley Wallace (now deceased) and Julia M. Wallace (now Julia M. Holst) were husband and wife. Julia has succeeded to Manley's interest. We refer to these interests as those of the Wallaces.

2. Ronald and Shirley, husband and wife, are both now deceased. They are represented in this litigation by Ronald's daughter, Barbara G. Hoover, who is administrator of both estates. We refer to the interests she represents as those of the Huffmans.

that time there is no presumption that the transferee is the owner.

The court found no indication that the Huffmans and Wallaces "otherwise agreed," and hence the Huffmans were entitled to an unqualified endorsement which would render the Wallaces liable to them on the Webbs' note.

The Huffmans cite comment 6 for Iowa Code section 554.3201 in support of the trial court ruling. Commercial code comments were privately prepared for 35A Iowa Code Annotated (1967). Comment 6 provides in part:

> The question commonly arises where the purchaser has paid in advance and the endorsement is omitted fraudulently or through oversight; a transferor who is willing to endorse only without recourse or unwilling to endorse at all should make his intentions clear.

The Huffmans contend that circumstances bolster their position. They were not represented by counsel and were inexperienced in commercial transactions. The Wallaces, on the other hand, were well experienced.

The Huffmans thus begin with a statutory provision and claimed equitable considerations. The plain facts however compel a finding that the Huffmans and the Wallaces did provide otherwise. Notwithstanding their comparative lack of commercial experience, the Huffmans did sign a contract which provided merely that the Wallaces quitclaim the interest in question. The basic purpose of a quitclaim is to release an interest to another without professing or warranting a valid title. "Quitclaim deed" is defined by Black's Law Dictionary 1126 (5th Ed.1979) as intended "to pass any title, interest, or claim ... but not professing that such title is valid, nor containing any warranty or covenants...."

The assignment to the Huffmans, quoted above, carefully omitted any words of endorsement. Taken together the contract and assignment convey the unmistakable impression that the absence of a provision for an endorsement was deliberate.

It is clear that a transferor may negate the right to an unqualified endorsement by showing an agreement to the contrary. The agreement can be either expressed or implied. W. Hawkland & L. Lawrence, 4 *Uniform Commercial Code Series* § 3 201:10 (1984).

The trial court erred in ordering an unqualified endorsement from the Wallaces. The judgment of the trial court is reversed and the case remanded for entry of judgment for the defendants.

REVERSED AND REMANDED.